**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL PICKHOLZ,

                                    Plaintiff,

v.

TRANSPARENTBUSINESS, INC. AND
ALEXANDRE KONANYKHIN,

                                    Defendants.

Civil Action No.: 22-2504 (ES) (JBC)

OPINION

SALAS, DISTRICT JUDGE

Plaintiff Michael Pickholz initiated this action against Defendants Transparentbusiness, Inc. ("Transparent") and Alexandre Konanykhin ("Konanykhin") (together, "Defendants"), bringing six counts against all Defendants under federal and state law. (D.E. No. 1 ("Complaint or Compl.")). Before the Court is Defendants' joint motion to dismiss Plaintiff's Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. No. 8 ("Motion")). The Motion is fully briefed. (D.E. No. 8-1 ("Mov. Br."); D.E. No. 12 ("Opp. Br."); D.E. No. 14 ("Reply")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Motion is **GRANTED-in-part** and **DENIED-in-part**.

## I.        BACKGROUND

### A.        Parties

Defendant Transparent is "a digital platform that helps companies manage remote workers." (Compl. ¶ 12). Transparent is incorporated in Delaware and has its principal place of business in New York. (*Id.*). Defendant Konanykhin is the Chief Executive Officer and Founder

of Transparent.  (*Id.* ¶ 13).  Konanykhin resides in Nevada.  (Mov. Br. at 20).  Plaintiff Pickholz is a former employee of Transparent.  (Compl. ¶ 11).  Plaintiff is a citizen of New Jersey, and worked for Transparent remotely from his home in Ridgewood, New Jersey.  (*Id.*).

### B.    Factual Background

On August 20, 2018, Plaintiff was hired as the Chief Financial Officer ("CFO") of Defendant Transparent.  (*Id.* ¶ 15; D.E. No. 8-2, Ex. A ("Employment Letter") to Declaration of Alexandre Konanykhin).  At some point during his employment, Plaintiff was also appointed as Secretary of the Board for Transparent.  (Compl. ¶ 3).  According to the terms of the Employment Letter, Plaintiff was hired as an Interim CFO from August 21, 2018, through September 30, 2018, at an annualized salary of $40,000.  (Employment Letter at 2; Compl. ¶ 15).  After October 1, 2018, Plaintiff was to become a full-time employee at an annualized salary of $80,000.[1] (Employment Letter at 1; Compl. ¶ 16).  On January 1, 2019, Plaintiff was put on payroll.  (Compl. ¶ 16).  The Employment Letter provided that Plaintiff's full-time compensation would be as follows:

- base salary of $80,000 + 100,000 shares, which may grow into $2 million value at the IPO and into $100 million value if we reach the objectives stated in our kmgi.us/25 video;
- re-signing bonus of $20,000 per each full 12 months of full-time employment;
- mandatory raises of the cash component of base salary to $120,000 after 12 months of full-time employment and to $200,000 after 24 months of full-time employment;
- discretionary bonuses and raises

(Employment Letter at 1).  The Employment Letter also provided that

If for any reason your position is terminated prior to October 1, 2018, the accrued salary will be paid to you at the earlier of (1) within five (5) business

---

[1]    The Complaint alleges that Plaintiff was considered a full-time consultant from October 1, 2018 through January 1, 2019, and was not considered a full-time employee until January 1, 2019.  (Compl. ¶ 16).  However, the Employment Letter states that Plaintiff's position "will become a **full-time employment** position on October 1, 2018." (Employment Letter at 1 (emphasis in original)).  For the purposes of this Opinion, the distinction is not relevant.

2

days of TransparentBusiness notifying you of this change, or (2) by October
1, 2018.

(*Id.* at 2).

According to the Complaint, over the course of his employment, "[b]eginning almost immediately after he started working with [Transparent]," Plaintiff repeatedly reported "conduct that he reasonably and in good faith believed to be fraud and/or a violation of federal securities laws and regulations" to executives and Board members of Transparent.  (Compl. ¶ 21).  On February 27, 2019, Plaintiff allegedly discussed his concerns about potential violations of securities, accounting, and tax laws to Transparent's Board during a full Board meeting.  (*Id.* ¶ 48).  On that same day, Plaintiff was allegedly stripped of his position as Secretary of the Board.  (*Id.* ¶ 3).  On March 1 and 4, 2019, Plaintiff refused to issue bonuses to Howard Needle, Transparent's Senior Vice President of Capital Markets, and Ken Arredondo, a member of Transparent's Board, at the request of Defendant Konanykhin because he believed the bonuses were "for a direct commission on capital raising" which he believed to be prohibited by federal law.  (*Id.* ¶¶ 50–52; *see also id*. ¶ 21)*.*  Plaintiff also refused to send what he believed to be "incomplete, inaccurate, and unaudited financial statements" to investors at Defendant Konanykhin's request.  (*Id.* ¶¶ 49 & 52).

Thereafter, in an email sent on March 4, 2019, Defendant Konanykhin removed Plaintiff as CFO, stating that "I therefore would like to keep you as our advisor but I [sic] not the CFO, effective tomorrow."  (*Id.* ¶¶ 3 & 53; D.E. No. 1-12, Ex. L to Compl.).  Nonetheless, Plaintiff received his full CFO salary through the month of March.  (Compl. ¶ 67; D.E. No. 1-14, Ex. N to Compl. (indicating that the proposed new role would include a lower monthly retainer but that "Your payroll this month [March] is not affected.")).  Sometime after his removal as CFO, Plaintiff informed Arredondo that he believed his removal constituted retaliation under Dodd-Frank and the Sarbanes-Oxley Act.  (Compl. ¶ 61).  Over the course of several weeks in March and April 2019,

Plaintiff and Defendant Konanykhin negotiated over a new position for Plaintiff at Transparent through email correspondence.  (*Id.* ¶¶ 61–66).  According to the Complaint, Plaintiff was concerned about the payment structure for his new position, as he believed it would violate federal securities laws.  (*Id.* ¶¶ 63, 65, & 66).  On March 10, 26, and 28, 2019, Plaintiff reported Defendants' allegedly unlawful conduct to the U.S. Securities Exchange Commission ("SEC").  (*Id.* ¶ 2).  On April 5, 2019, Plaintiff was taken off Transparent's payroll.  (*Id.* ¶ 67).  Plaintiff alleges that he was unlawfully terminated in retaliation for "his prior complaints of fraud and/or violation of the federal securities laws and regulations."  (*Id.*).

According to the Complaint, Defendants continued to retaliate against Plaintiff after his termination.  (*Id.* ¶ 70).  Specifically, Plaintiff alleges that under the Employment Letter he was promised 100,000 shares of Transparent stock but was only issued 50,000 shares.  (*Id.* ¶ 71).  "Over time, [Transparent] had a stock split, stock swap or some similar action that increased [Plaintiff's] 100,000 shares to a total of 1,000,000 shares."  (*Id.*).  Despite this, Plaintiff was not issued stock certificates converting his 50,000 shares to 500,000 shares, nor providing him the remaining 500,000 outstanding shares he is allegedly owed.  (*Id.*).

On February 3, 2021, Plaintiff contacted a Transparent representative requesting 950,000 shares he was allegedly owed (1,000,000 minus the 50,000 shares he had been issued initially).  (*Id.* ¶¶ 72 & 73).  Transparent did not respond to Plaintiff, and Plaintiff sent two additional emails on March 4, 2021, and April 26, 2021.  (*Id.* ¶ 74).  On April 26, 2021, a Transparent representative emailed Plaintiff, stating that Plaintiff should have received a split-adjusted certificate for 500,000 shares—converting his 50,000 originally issued shares—in December 2020.  (*Id.* ¶ 75).  The representative stated that Plaintiff was not entitled to an additional 500,000 shares because under his employment contract, the 100,000 shares were part of his salary and were prorated accordingly,

so that Plaintiff was only entitled to half of the shares, or the 50,000 (now 500,000), already issued to him.  (*Id.*).  Plaintiff alleges that throughout 2021 he sent numerous correspondence to Transparent disputing whether he had received the stock-adjusted certificate for 500,000 shares and whether he was owed an additional 500,000 shares.  (*Id.* ¶ 76).  On March 18, 2022, Plaintiff received a split-adjusted certificate for 500,000 shares of Transparent common stock.  (*Id.* ¶ 71). Plaintiff has not been issued the remaining 500,000 shares he alleges he is entitled to.

Finally, in March 2022 Transparent allegedly announced at a shareholder meeting that it would provide to every shareholder one Unicoin[2] for each Transparent share they hold.  (*Id.* ¶ 77). Plaintiff never received Unicoins corresponding to the 500,000 shares he owns of Transparent stock or for the 500,000 shares he is allegedly owed.  Accordingly, Plaintiff also alleges that he is owed 1,000,000 Unicoins.  (*Id.*).

### C.    Procedural History

Plaintiff initiated this action on April 29, 2022, bringing six causes of action as follows: (i) retaliation in violation of Dodd-Frank against Defendant Transparent; (ii) retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") against both Defendants; (iii) violation of the New Jersey Wage Law against both Defendants; (iv) violation of the New Jersey Wage Theft Act against both Defendants; (v) breach of contract against Defendant Transparent; and (vi) promissory estoppel against Defendant Transparent.  (*See Id*. ¶¶ 78–106). Plaintiff seeks declaratory and injunctive relief, including reinstatement of his employment; attorney's fees and costs; and economic, compensatory, punitive, and liquidated damages for lost wages, double backpay, equity and fringe benefits, future pecuniary losses, and emotional distress, and including the 500,000 shares of Transparent stock and 1,000,000 Unicoins he is allegedly

---

[2]        According to the Complaint, a Unicoin is "a form of cryptocurrency."  (*Id.* ¶ 6).

5

owed.  (*Id*. at 30–31).  On July 25, 2022, Defendants filed the instant Motion for failure to state a claim under Rule 12(b)(6), challenging all six of Plaintiff's causes of action.  (Motion).  The Motion is fully briefed.  (Mov. Br; Opp. Br.; Reply).

On March 22, 2023, the Court issued a text order directing the parties to submit supplemental briefing on the following issues: (i) what the pleading standard is on Dodd-Frank retaliation claims, citing to cases examining Dodd-Frank retaliation claims on a motion to dismiss posture (*see, e.g.*, *Cellucci v. O'Leary*, No. 19-2752, 2020 WL 977986, at *30–31 (S.D.N.Y. Feb. 28, 2020)); (ii) whether a contract for a term of employment overcomes the presumption of at-will employment in New Jersey; and (iii) whether an ambiguous term in an express employment contract overcomes the presumption of at-will employment in New Jersey.  (D.E. No. 22).  On April 6, 2023, the parties filed supplemental briefing on these issues.  (D.E. No. 23 ("Pl. Suppl. Br."); D.E. No. 24 ("Def. Suppl. Br.")).

## II.   LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory

statements" are all disregarded.  *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The burden is on the moving party to show that the plaintiff has not stated a facially plausible claim.  *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as well as the documents attached to and specifically relied upon or incorporated therein.  *See Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Dodd-Frank Retaliation

The Dodd-Frank Act protects "whistleblowers" who cooperate with the SEC against their employers from retaliation.  Specifically, the Dodd-Frank Act provides:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;

15 U.S.C. § 78u-6(h)(1)(A).  Under the Act, a "whistleblower" is defined as "any individual who provides . . . information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission."  *Id.* § 78u-6(a)(6).  To bring a Dodd-Frank retaliation claim, a plaintiff must demonstrate that he suffered an adverse employment action after he made a report to the SEC based on "a reasonable belief that the information [he

provided] relates to a possible securities law violation." *Digital Realty Trust, Inc., v. Somers*, 138 S. Ct. 767, 775 (2018) (quoting 17 C.F.R. § 240.21F-2(b)(1)(i)–(ii)).

### 1.     Pleading Standard

Defendants urge this Court to apply the heightened pleading standard under Rule 9(b) to the element of a Dodd-Frank retaliation claim which requires that a plaintiff provide information relating to a securities law violation to the SEC.  (Mov. Br. at 18).  According to Defendants, Rule 9(b) governs this element of a Dodd-Frank retaliation claim because "Rule 9(b) applies to all allegations of fraud or mistake, including such allegations contained within non-fraud causes of actions."  (*Id.*).  Under this standard, Defendants argue that Plaintiff must allege with specificity what he communicated to the SEC.  (*Id.* at 19).  Plaintiff counters that he has provided particularized allegations regarding the alleged fraudulent conduct he shared with the SEC, and that these allegations meet the pleading standards of Rule 8.  (Opp. Br. at 6–7).  The Court asked for supplemental briefing on the pleading standard for Dodd-Frank retaliation claims, including reference to specific cases assessing the pleading standard for such claims.  (D.E. No. 22).

In assessing Dodd-Frank retaliation claims on a motion to dismiss, courts have found that a plaintiff's allegations cannot be "wholly untethered" from the elements of the law alleged to have been violated.  *Lawrence v. Int'l Bus. Mach. Corp.*, No. 12-8433, 2017 WL 3278917, at *10 (S.D.N.Y. Aug. 1, 2017); *see also Cellucci v. O'Leary*, No. 19-2752, 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020).  Though it does not appear that any courts in the Third Circuit have provided what must be alleged in support of a Dodd-Frank retaliation claim, the Court finds these cases from the Southern District of New York instructive.  In *Lawrence*, the district court explained that "[t]he statute does not specify what, in particular, a purported whistleblower must establish to demonstrate that criminal fraud or securities-related malfeasance is afoot."  2017 WL 3278917, at

*10 (quoting *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014)).   It further reasoned that "[w]hile a whistleblower need not establish that the employer's conduct actually violated an enumerated provision of the securities laws . . . the Second Circuit has expressed skepticism toward the proposition that a whistleblower's complaint need not even approximate specific elements of the enumerated provisions alleged violated, or that there is no requirement that the violation must be material." *Id.* (internal quotations and citations omitted).   Implicit in this reasoning is that a plaintiff must at least allege which securities laws and regulations he reasonably believed had been violated.   Though *Lawrence* was issued prior to the Supreme Court's decision in *Digital Reality*, nothing in that case seems to alter this finding by the district court.

Indeed, the court in *Cellucci* applied the same reasoning even after *Digital Reality*.   The *Cellucci* court dismissed the plaintiff's Dodd-Frank retaliation claim, considering in part that "[n]ot only are the relevant allegations wholly untethered from the elements of any particular violation, the amended complaint does not even identify a specific provision or section [of the securities laws] that may have been violated."   2020 WL 977986, at *10.   Notably, the court also considered that "the amended complaint contains no allegation as to the contents of [the plaintiff's] complaint" to the SEC, and that, "accordingly, the [c]ourt has no way to assess whether he was complaining of conduct that is even arguably within the scope of the Dodd-Frank whistleblower provision." *Id.*[3]   Consistent with this caselaw, though a plaintiff need not prove an actual violation of the federal securities laws, a plaintiff must at least plead which laws he reasonably believed were violated, and what conduct he reported to the SEC.

---

[3]   As Plaintiff points out, the court in *Cellucci* additionally indicated that a plaintiff must plead that the defendant was aware of the plaintiff's protected activity, *i.e.* report to the SEC, in order to plead a Dodd-Frank retaliation claim.   (Pl. Supp. Br. at 2); *Cellucci*, 2020 WL 977986, at *10.   Nonetheless, here Defendants do not argue that Plaintiff must plead that Defendants were aware of his protected activity, and the Court will not consider this argument at this time.

Here, Plaintiff does not sufficiently plead a Dodd-Frank retaliation claim under these standards.  Though Plaintiff provides detailed examples of Defendants' conduct, he alleges only that "he reasonably believed [that conduct] to be financial or accounting fraud and violations of federal securities laws and regulations."  (Compl. ¶ 2; *see also id.* ¶¶ 5, 48, 80 & 84).  At no point does Plaintiff reference any specific law he believed Defendants were violating.  Likewise, though Plaintiff alleges that he "made formal written submissions to the [SEC] about the Defendants' unlawful conduct," Plaintiff does not allege what conduct he provided to the SEC.  (*Id.* ¶ 2).  As in *Cellucci*, here Plaintiff "asks the Court to infer that his report to the SEC encompassed every allegedly improper communication or omission cited in the amended complaint."  2020 WL 977986, at *10.  Without any allegations regarding what securities laws Plaintiff believes Defendants violated and what information Plaintiff provided to the SEC, the Court cannot determine whether Plaintiff "possess[ed] a reasonable belief that the information" he provided to the SEC "relates to a possible securities law violation."  17 C.F.R. § 240.21F-2(b)(1)(i)–(ii).  Accordingly, Plaintiff's Dodd-Frank retaliation claims premised on the adverse employment actions which allegedly occurred after he reported Defendants' conduct to the SEC are **DISMISSED** *without prejudice*.[4]

Though the Court agrees with the courts from the Second Circuit that Plaintiff must provide the Court with some allegations regarding *which* federal securities laws and regulations he reasonably believed Defendants violated and what conduct he informed the SEC about, the Court

---

[4]     To the extent Plaintiff argues that his Dodd-Frank claim premised on the remaining 500,000 shares should survive the motion to dismiss because Defendants did not move to dismiss this claim specifically, the Court is not convinced.  (*See* Opp. Br. at 7 n. 3).  Defendants moved to dismiss Plaintiff's Dodd-Frank claim on the bases that Plaintiff was not a whistleblower at the time of any adverse employment action and that Plaintiff had failed to state a claim by failing to meet the Rule 9(b) pleading standards.  As Defendants intimate in their reply brief, these blanket arguments refer to defects in Plaintiff's pleading of all his Dodd-Frank-related claims, "including a theoretical claim for the remaining 500,000 shares."  (Reply at 3–4).  Plaintiff has failed to adequately allege that he had an objectively reasonable belief that Defendants were violating the securities laws and reported to the SEC accordingly.  This requires dismissal of all of Plaintiff's Dodd-Frank retaliation claims, including his claim to the remaining 500,000 shares.

does not agree with Defendants that Plaintiff's Dodd-Frank retaliation claims are subject to the heightened pleading requirements of Rule 9(b). Defendants have provided no caselaw to support their argument that Rule 9(b) governs the element of a Dodd-Frank retaliation claim that requires a plaintiff to provide information relating to a securities law violation to the SEC. (*See* Def. Supp. Br. at 3). The Court is not convinced that it is appropriate, without any precedential support, to specifically apply the heightened pleading requirements of Rule 9(b) to an element of Plaintiff's Dodd-Frank retaliation claims, and the Court will not do so here.

### 2.    Timing of Retaliatory Act

Defendants additionally argue in their moving brief and in their supplemental brief that Plaintiff has not adequately alleged that he was a whistleblower at the time of his termination as that term is defined by the Dodd-Frank Act. (Mov. Br. at 12–15; Def. Supp. Br. at 4). Defendants first argue that Plaintiff was not terminated at all, but that he "effectively resigned from Transparent and left its payroll by not accepting a new job offer after he had been removed as CFO." (Mov. Br. at 16). Alternatively, Defendants argue that Plaintiff was terminated on March 4, 2019 when he was removed as CFO—several days before he first complained to the SEC—and so this termination cannot constitute retaliation under the Dodd-Frank Act. (*Id.* at 15; Reply at 3). Plaintiff argues that he was terminated on April 5, 2019, when he was taken off of Transparent's payroll—which succeeded his complaints to the SEC on March 10, 26, and 28, 2019. (Opp. Br. at 5 (citing Compl. ¶¶ 2, 4, & 64–67)).

The parties agree, and the Court concurs, that under the Supreme Court's precedent in *Digital Realty*, 138 S. Ct. at 775, a plaintiff may only bring a claim for retaliation under the Dodd-Frank Act for retaliatory acts which occurred *after* the plaintiff made reports to the SEC. (Mov. Br. at 14; Opp. Br. at 5; Pl. Suppl. Br. at 2). Accordingly, to the extent Plaintiff alleges claims for

retaliation related to conduct which occurred prior to March 10, 2019—including his removal as a secretary of the Board and his demotion from CFO—those claims are **DISMISSED** *with prejudice*.[5]

### B.  Breach of Contract and Promissory Estoppel

To state a claim for breach of contract under New Jersey law, a plaintiff must prove four elements: (i) that both parties entered a valid contract containing certain terms; (ii) that the plaintiff fulfilled his part of the contract; (iii) that the defendant breached its part of the contract; and (iv) that the plaintiff experienced loss as a result of the breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021). To state a valid promissory estoppel claim, a plaintiff must show that: (i) there was a "clear and definite promise;" (ii) there was an expectation that the plaintiff would rely on that promise; (iii) the plaintiff reasonably relied on the promise; and (iv) there was a "definite and substantial" harm to the plaintiff. *Id.* (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)).

Defendants argue that Plaintiff's breach of contract and promissory estoppel claims should be dismissed because Plaintiff was an at-will employee and failed to "allege facts establishing he was entitled to any additional compensation or benefits following the end of his employment with Transparent." (Mov. Br. at 2). Specifically, Defendants argue that because there is a presumption of at-will employment in New Jersey, the Employment Letter did not need to state explicitly

---

[5]    To the extent Plaintiff brings claims for retaliation related to conduct which occurred *after* March 10, 2019, those claims are not barred under *Digital Realty* or its progeny on this basis. Defendants' argument on this point essentially amounts to a dispute of fact regarding whether and when Plaintiff was terminated. According to Defendants, Plaintiff was either not terminated at all, or was terminated when he was removed as CFO on March 4, 2019. But, in his Complaint, Plaintiff alleges that he was terminated when he was taken off of payroll on April 5, 2019. (Compl. ¶ 4). And Defendants agree that Plaintiff was paid through the end of March 2019. (Mov. Br. at 25). Whether Plaintiff resigned or was terminated is a question of fact not properly before the Court at this time. Nonetheless, as discussed above, *see supra* at 8–10, the Court dismisses Plaintiff's claims for retaliation related to conduct which occurred *after* March 10, 2019, without prejudice for failure to meet the pleading requirements for a Dodd-Frank retaliation claim.

whether Plaintiff's employment was at-will or for-cause.  (*Id.* at 22–26).  And because Plaintiff was an at-will employee, he cannot establish that Transparent ever made a "clear and definite promise" of future employment to him, undermining his promissory estoppel claim.  (*Id.* at 29).  Similarly, Defendants argue that Plaintiff's breach of contract claim fails because, as an at-will employee, Plaintiff cannot establish any entitlement to future salary or earnings and does not allege that he was not compensated for time worked.  (*Id.* at 29–30).  Plaintiff argues that the Employment Letter is at least ambiguous as to whether he was an at-will employee or a for-cause employee hired for three years, and therefore his claims for breach of contract and promissory estoppel should survive a motion to dismiss.  (Opp. Br. at 8).  The Court asked for supplemental briefing on whether an ambiguous term in an express employment contract overcomes the presumption of at-will employment in New Jersey.  (D.E. No. 22).

Employment is presumed to be "at-will" in New Jersey.  *Varrallo v. Hammond Inc.*, 94 F.3d 842, 845 (3d Cir. 1996) (citing *Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 552–53 (N.J. 1994)).  "While exceptions to this doctrine do exist, '[t]oday, both employers and employees commonly and reasonably expect employment to be at-will, unless specifically stated in explicit, contractual terms.'"  *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Bernard v. IMI Sys., Inc.*, 618 A.2d 338, 346 (N.J. 1993)) (alternations in original).  Thus, to overcome this presumption, a plaintiff must demonstrate that there was an agreement to contract to something other than at-will employment—for example, that the parties had agreed to contract for a term of years, that employment would be "for-cause," or that employment is subject to tenure.  *See Sherrill v. City of Hoboken*, No. 16-3092, 2020 WL 64617, at *4 (D.N.J. Jan. 6, 2020).  Such an agreement can be made through an explicit provision in an employment contract or through an implied contract.  *See McCrone*, 561 F. App'x at 172–73 (collecting cases and explaining that the

13

New Jersey Supreme Court has found that a company-wide policy of for-cause employment provided in employment manuals or oral communications can overcome the presumption of at-will employment).   In the absence of a clear disclaimer of at-will status in a contract, courts consider extrinsic evidence to determine whether at-will status has been revoked.  *See Witkowski*, 643 A.2d at 551–53 (considering an employee handbook as extrinsic evidence of the revocation of at-will status).

Generally, "[i]n resolving a contract dispute, 'the initial determination is whether the contract is ambiguous concerning the dispute between the parties.'"  *United States v. Pantelidis*, 335 F.3d 226, 235 (3d Cir. 2003) (quoting *Sumitomo Machinery Corp. of America, Inc. v. AlliedSignal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996)).   A contract is "ambiguous" where it is susceptible to more than one reasonable interpretation.   *Id.*   "If a contract provision is unambiguous—i.e., can reasonably be read only one way—the court will interpret it as a matter of law."  *In re House of Vizia Gold Creations, Inc.*, 278 B.R. 86, 90 (Bankr. D.V.I. 2002) (citing *In re Stendardo*, 991 F.2d 1089, 1094 (3d Cir. 1993)).

Here, Plaintiff argues that whether the Employment Letter established employment for a term of three years is "ambiguous and dictates that the Court should permit discovery and extrinsic evidence as to the intention of the parties upon entering into the Employment Letter."  (Opp. Br. at 8).  The language in the Employment Letter that Plaintiff points to is as follows:

- base salary of $80,000 + 100,000 shares, which may grow into $2 million value at the IPO and into $100 million value if we reach the objectives stated in our kmgi.us/25 video;
- re-signing bonus of $20,000 per each full 12 months of full-time employment;
- mandatory raises of the cash component of base salary to $120,000 after 12 months of full-time employment and to $200,000 after 24 months of full-time employment;
- discretionary bonuses and raises

14

(Employment Letter at 1).  Plaintiff presents this language as a "promise" from Defendants to "issue Pickholz 100,000 shares of [Transparent] stock" and to "pay Pickholz's salary and bonuses for at least the first three years of his employment," regardless of his continued employment. (Compl. ¶¶ 97& 99).  The Court is not convinced.

Though Plaintiff correctly argues that generally, New Jersey law provides that a complaint premised on an ambiguous contract provision presents a question of fact, *In re Stendardo*, 991 F.2d at 1094, Plaintiff does not explain how this principle relates to the presumption of at-will employment status in New Jersey.  (*See* Opp. Br. at 8).  In fact, neither party has provided, and the Court has not found, any caselaw directly addressing this issue.  In Plaintiff's supplemental brief, he cited a single case concerning a teacher's ten-month contract.  (Pl. Suppl. Br. at 2–5 (citing *Halpern v. Marion P. Thomas Charter Sch.*, No. 5413-11T3, 2013 WL 4607437 (N.J. Super. Ct. App. Div. Aug. 30, 2013)).  In *Halpern*, the New Jersey Appellate Division reversed the grant of summary judgment, finding that there was a material question of fact as to whether the plaintiff was an at-will employee.  *Halpern*, 2013 WL 4607437, at *4.  The Appellate Division considered that there was competing evidence regarding whether the plaintiff was hired at-will, including prior agreements between the parties that specified that employment was at-will and that the plaintiff was non-tenured, but that also provided for a term of employment—namely, the ten-month school year.  *Id.*  The court also considered evidence of the school's employment policies, including those stated in an employee handbook.  *Id.*  The court concluded that "[u]pon our careful review of the record, including a comparison of the earlier employment agreements with the current agreement, and noting the absence of any reference to at-will employment and termination clauses, we conclude that the parties' intent pertaining to [the plaintiff's] at-will status was unclear."  *Id.*

15

The Court finds *Halpern* distinguishable at this point in the litigation.   Though the Appellate Division did consider that there was no reference to at-will employment in the employment agreement, the court considered that fact together with other evidence that made the parties' intentions ambiguous, including their prior course of dealing, the school's employment policies, and the company's employee handbook.  Here, Plaintiff has not identified anything other than a single allegedly ambiguous statement in the Employment Letter to support that the parties intended to contract for other than at-will employment.  The Court is not convinced that this, on its own, is sufficient to overcome the presumption of at-will employment.   Further, the circumstances of the employment in *Halpern* are factually distinct from the circumstances of employment in the present case: it is standard for teachers to be hired for the length of a school year, and so it is reasonable to assume an employment contract with a school is for this set term. Plaintiff does not submit anything to show that a similar standard exists for his type of employment.  Accordingly, Plaintiff's reliance on this case is unavailing.

Though there does not appear to be caselaw directly addressing whether an ambiguous term in a contract can overcome the presumption of at-will employment in New Jersey, the caselaw on at-will employment status in New Jersey is still instructive.  The New Jersey Supreme Court has provided that a revocation of at-will status must be "stated in explicit, contractual terms." *Bernard*, 618 A.2d at 346.  It is possible to overcome the presumption of at-will employment with an implied contract, which can include evidence of the parties' intent, but to do so, a plaintiff must identify some basis for his belief that the parties' agreed to something other than at-will employment, such as an oral agreement or an employee handbook providing for for-cause employment.  *See id.*  Here, Plaintiff asks for discovery on extrinsic evidence and the parties' intent (Opp. Br. at 8), but fails to identify any extrinsic evidence he might present or discover, given the

opportunity, to clarify the intentions of the parties and rebut the presumption of at-will employment. (*See generally* Compl., Opp. Br. & Pl. Suppl. Br.). Apart from the allegedly ambiguous language in the Employment Letter, Plaintiff provides no facts to suggest that the parties agreed to contract for other than at-will employment. Given the presumption in New Jersey that all employment is at-will unless unequivocally stated otherwise, the Court is not convinced that the single ambiguous statement in the Employment Letter is enough to overcome this presumption.

Further, even if the Court were to accept that an ambiguous term in an employment contract could overcome the presumption of at-will employment in New Jersey, the Court is not convinced that the Employment Letter is ambiguous. Plaintiff points to language in the Employment Letter that provides an annualized salary set to increase after each year of employment. (Opp. Br. at 5). However, the New Jersey Supreme Court has explained that "it is both uncommon and unreasonable to expect employment for one year simply because an offer letter quotes an annual salary. . . . A salary or benefit package stated in annual terms does not, standing alone, entitle an employee to year-to-year employment." *Bernard*, 618 A.2d at 346. Likewise, the Court interprets the Employment Letter as providing annual salary amounts, contingent on continued employment.[6] Thus, the Court agrees with Defendants that the Employment Letter itself does not clearly provide for employment for a definite, fixed term, as it provides no clear end date or other indication that the employment was for a definite, fixed term apart from providing an annualized salary. (Def. Supp. Br. at 6). Without any facts suggesting the parties intended to contract

---

[6]     Defendants additionally argue that another term of the Employment Letter makes clear that Plaintiff's employment was at-will. Namely, the Employment Letter provides that "[i]f for any reason your position is terminated prior to October 1, 2018, the accrued salary will be paid to you at the earlier of: (1) within five (5) business days of TransparentBusiness notifying you of this change, or (2) by October 1, 2018." (Employment Letter at 2). According to Defendants, this is evidence that Plaintiff was an at-will employee. (Mov. Br. at 24). However, the Court agrees with Plaintiff that this clause is clearly pursuant to Plaintiff's initial, transitionary employment with Transparent, and does not clearly apply to his full-time employment after October 1, 2018. (*See* Opp. Br. at 10).

otherwise, the Court cannot, relying only on the Employment Letter, find that there was any ambiguity in whether Plaintiff was an at-will employee. *See Hindle v. Morrison Steel Co.*, 223 A.2d 193, 196 (N.J. Super. Ct. App. Div. 1966) ("A hiring at a certain sum a year, no time being specified, unaccompanied by facts or circumstances from which a different intention may be inferred, is an employment for an indefinite time and not for a year.").

Accordingly, the Court finds that Plaintiff has not sufficiently pled that his employment was for a term of years or was for-cause, and that he is entitled to the future salary and benefits provided in the Employment Letter.  To the extent Plaintiff's breach of contract and promissory estoppel claims are premised on his yearly salary, re-signing bonus, and discretionary bonuses and raises, these claims are **DISMISSED** *without prejudice*.

Plaintiff additionally brings claims for breach of contract and promissory estoppel premised on the 100,000 shares provided for in the Employment Letter (1,000,000 shares after conversion).  Unlike the other compensation provided for in the Employment Letter, it is not clear that Plaintiff's claim to these shares is contingent on whether his employment was at-will.  Though Defendants argue that the stock-based compensation was to be treated the same as the cash-based compensation, including being distributed to Plaintiff pro rata (Mov. Br. at 30; Reply at 14–15), this is not clear from the Employment Letter or Defendants' actions.  As Plaintiff argues, "there is nothing in the Employment Letter stating or plainly showing that those shares would be issued on a pro rata basis throughout the year."  (Opp. Br. at 10; *see* Employment Letter).  And Plaintiff alleges that he was provided the first 50,000 shares (500,000 after conversion) immediately upon reaching full-time employment status and prior to his completion of six months employment. (Compl. ¶ 75).  As such, one reasonable interpretation of the Employment Letter is that Plaintiff was not entitled to the remaining 50,000 shares (500,000 after conversion) until he had completed

six months of employment.  Another reasonable interpretation of the Employment Letter is that Plaintiff was entitled to the other 50,000 shares, or some prorated portion of them, prior to his termination.  Accordingly, the Court agrees that the Employment Letter is ambiguous regarding Plaintiff's entitlement to the remaining 500,000 shares, and his breach of contract and promissory estoppel claim based on those shares will survive.

Relatedly, Defendants argue that Plaintiff's claim that he is owed Unicoins must be dismissed because the Employment Letter does not reference "Unicoins."  (Mov. Br. at 25–26). The Court is not convinced.  Defendants do not provide any caselaw to support this argument. And Plaintiff clearly alleges that his entitlement to Unicoins is premised on his entitlement to shares of Transparent stock, which arises from the Employment Letter.  (*See* Compl. ¶ 6 ("In March 2022, [Transparent] announced that it will give each [Transparent] shareholder one Unicoin (a form of cryptocurrency) for each share of [Transparent] stock held, which means that [Transparent] also owes [Plaintiff] 1,000,000 Unicoins.")).  Thus, Plaintiff's claim to Unicoins is contingent upon his claim to Transparent shares.  Because the Court finds that Plaintiff's breach of contract and promissory estoppel claims to Transparent shares survive, so too do Plaintiff's related claims to Unicoins.

Accordingly, the Court **DENIES** Defendants' Motion to dismiss the breach of contract and promissory estoppel claims insofar as they are premised on the provision of 100,000 shares, including the claim to Unicoins.

### C.    CEPA

Defendants move to dismiss Plaintiff's CEPA claim as time barred by CEPA's one-year statute of limitations.  (Mov. Br. at 21–22).  Specifically, Defendants argue that Plaintiff's CEPA claim arose on either March 9, 2019, when he was removed as CFO, or on April 5, 2019, when he

was taken off of payroll, and so Plaintiff's April 19, 2022 Complaint was filed "more than two years after the statutory period expired." (*Id.* at 22; Reply at 9). Plaintiff argues that his CEPA claim arose in 2021, when Defendants refused to issue him the full 1,000,000 shares of Transparent stock he is allegedly owed. (Opp. Br. at 11). The Court finds that the claim is barred under either Plaintiff's or Defendants' theories and is dismissed accordingly.

To bring a CEPA claim, a plaintiff must demonstrate four elements:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). CEPA claims are subject to a one-year statute of limitations, which begins to run on the date of the offending act, or on the date of the final act if a plaintiff alleges a pattern or series of acts. N.J. Stat. Ann. § 34:19–5; *Green v. Jersey City Bd. of Educ.*, 828 A.2d 883, 885 (N.J. 2003). If Plaintiff's CEPA claim arose in March or April 2019—as argued by Defendants—his claim, brought in April 2022, is barred by this one-year statute of limitations.

Notwithstanding, "[a]s a matter of law, any post-employment conduct by Defendants is not actionable under CEPA." *Knight v. Vitamin Shoppe, Inc. Executive Severance Pay Policy*, No. 21-2636, 2022 WL 3593882, at *4 (D.N.J. Aug. 23, 2022). New Jersey courts have limited CEPA claims to actions taken against *current*, as opposed to *former*, employees. *See Carlson v. Twnp of Lower Alloways Creek*, No. 06-3779, 2008 WL 2446804, at *2–3 (D.N.J. June 16, 2008) (collecting New Jersey cases). The New Jersey Appellate Division, when interpreting the CEPA statute, explained that "[t]he use of the present tense—'performs'—suggests the Legislature intended to include under CEPA only adverse employment actions that are taken against an

employee while he or she is still an employee, and not after termination." *Beck v. Tribert*, 711 A.2d 951, 956 (N.J. Super. Ct. App. Div. 1998). The court further considered the fact that the statute elsewhere provides the term "former employee," suggesting that if the Legislature had intended to allow for an action by a former employee they would have so indicated. *Id*.

Thus, even accepting Plaintiff's allegation that his CEPA claim arose in 2021, the claim is barred because Plaintiff was no longer employed by Defendants at that time, and "CEPA does not impose liability upon a former employer for alleged post-employment actions that affect a former employee." *Manee v. Edgewood Properties, Inc*., No. 10990-01, 2007 WL 268248, at *11 (N.J. Super. Ct. App. Div. Feb. 1, 2007). Accordingly, Plaintiff's CEPA claim is **DISMISSED** *with prejudice*.

### D.      New Jersey Wage Law

Defendants also move to dismiss Plaintiff's New Jersey Wage Payment Law claim, arguing that the claim fails as a matter of law because Plaintiff "received all 'direct monetary compensation' for his 'labor or services rendered' for his entire tenure at Transparent." (Mov. Br. at 26). According to Defendants, the New Jersey Wage Payment Law provides for recovery only of wages earned during employment, and therefore does not extend to (i) Plaintiff's claim for future salary he would have received had he remained with Transparent for three years, or (ii) Plaintiff's claim for supplementary incentives and bonuses. (*Id.* at 26–27). Plaintiff does not directly respond to these arguments but argues broadly that, as with his breach of contract and promissory estoppel claims, his New Jersey Wage Law claim should survive because his employment contract is at least ambiguous. (Opp. Br. at 7–8). For the following reasons, the Court agrees with Defendant.

*First*, Plaintiff's claim for future, unearned salary is not viable under the New Jersey Wage Payment Law.  Wages are defined in the New Jersey Wage Payment Law as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis."  N.J. Stat. Ann. § 34:11-4.1c.  By this definition, a plaintiff may only recover compensation for labor and services already provided by the plaintiff— not for future unearned compensation.  The Court is persuaded on this issue by Judge Wolfson's opinion in *Soranno v. Heartland Payment Systems, LLC*, No. 18-16218, 2020 WL 5652469 (D.N.J. Sept. 23, 2020).  As Judge Wolfson explained, the issue of whether post-employment earnings can be recovered under the New Jersey Wage Payment Law has not been addressed by the New Jersey Supreme Court.  *Id.* at *11.  However, in an unpublished opinion, the New Jersey Appellate Division reasoned that:

> Given the regulatory requirement to pay the employee his wages within ten working days of the last date of the applicable pay period, in this case, the last date of employment, it would appear that the entire legislative scheme simply does not apply to the payment of post-termination commissions.  If the statute were interpreted to apply to post-termination commissions, the employer would arguably be required to make payment to the employee within ten days of the last date of his employment.  Since the consummation of the commission sale may never take place, or may take place weeks or months after the employee's last work period with the company, and may ultimately be subject to modifications or amendments, such a requirement would be both unfair and unworkable.

*Id.* at *12 (quoting *Neal v. Eastern Controls, Inc.*, No. 06-4304, 2008 WL 706853, at *6 (N.J. Super. Ct. App. Div. Mar. 18, 2008)).  Judge Wolfson concluded that "[t]he plain language of the statute makes clear that the [Wage Payment Law] is meant to protect only those wages which an employee earned *before* the termination of his employment."  *Id.*  So too, here it would be illogical and unworkable to require an employer to pay within ten days of the last date of the applicable pay period a salary which would not accrue until months or years after that date.  Accordingly, the

Court agrees with Defendants that Plaintiff may not bring a claim under the New Jersey Wage Payment Law for future salary.  *See Sud v. Ness USA*, No. 21-12330, 2022 WL 1963711, at *4 (D.N.J. June 6, 2022).

*Second*, Plaintiff's claims for bonuses and shares of Transparent stock are also not viable under the New Jersey Wage Payment Law.  The definition of "wages" under the New Jersey Wage Payment Law excludes "any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto."  N.J. Stat. Ann. § 34.11-4.1(c). Plaintiff has not sufficiently alleged that the $20,000 re-signing bonus and 100,000 shares of Transparent stock provided in the Employment Letter are calculated in such a way as to constitute "wages" as opposed to supplementary incentives and bonuses under this statute.  In the absence of any argument from Plaintiff, the Court agrees with Defendants (Mov. Br. at 27), that they "fall[] outside the purview of § 34:11-4.1(c)'s definition of 'wages.'"  *Sud*, 2022 WL 1963711, at *4.

Accordingly, Plaintiff's New Jersey Wage Payment Law claim for recovery of future salary, bonuses, and Transparent stock is **DISMISSED** *without prejudice*.

### E.    New Jersey Wage Theft Act

Finally, Defendants move to dismiss Plaintiff's claim under the New Jersey Wage Theft Act.  Defendants argue that the law "was enacted <u>after</u> [Plaintiff's] last day of work with Transparent" and does not have retroactive effect.  (Mov. Br. at 30–31 (emphasis in original)). Plaintiff does not oppose Defendant's motion as to the New Jersey Wage Theft Act claim.  (Opp. Br. at 8 n.4).  Accordingly, Plaintiff's claim pursuant to the New Jersey Wage Theft Act is **DISMISSED** *with prejudice*.

## IV.    CONCLUSION

In summary, Defendant's Motion is **GRANTED-in-part** and **DENIED-in-part**. Plaintiff's Dodd-Frank retaliation claims premised on adverse employment actions which occurred

*prior to* March 10, 2019, Plaintiff's New Jersey Wage Theft Law claims, and Plaintiff's CEPA claims are **DISMISSED** *with prejudice*.  Plaintiff's Dodd-Frank retaliation claims premised on adverse employment actions which occurred *subsequent to* March 10, 2019; Plaintiff's claims for breach of contract and promissory estoppel premised on his yearly salary, re-signing bonus, and discretionary bonuses and raises; and Plaintiff's claims pursuant to the New Jersey Wage Payment Law are **DISMISSED** *without prejudice*.  Defendants' Motion is otherwise **DENIED**.  Plaintiff's claims for breach of contract and promissory estoppel premised on his entitlement to Transparent shares and Unicoins survive Defendants' Motion.  Plaintiff may file an amended complaint within 30 days of this decision.  An appropriate Order accompanies this Opinion.


**Dated:** February 8, 2024


_____

**Esther Salas, U.S.D.J.**